IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **JAMES THOMAS CARLAN,** *Plaintiff,* v. **TEGNA INC.** and **13WMAZ TV,** *Defendants.* | **CIVIL ACTION NO. 5:25-cv-00480-TES** |

**ORDER**

Pro se Plaintiff James Thomas Carlan filed a Complaint [Doc. 1] for defamation, negligence, and deprivation of constitutional rights against Virginia-based broadcast and digital media company TEGNA Inc. and its Georgia-based affiliate 13WMAZ TV. [Doc. 1, p. 1]. Along with his Complaint, Plaintiff also filed a Motion for Leave to Proceed *In Forma Pauperis* ("IFP") [Doc. 3]. The Court first addresses Plaintiff's request to proceed IFP and then turns its attention to the claims asserted in his Complaint.

A.   **Plaintiff's Motion for Leave to Proceed IFP**

District courts may allow a plaintiff to file a lawsuit without prepaying fees and costs under 28 U.S.C. § 1915. This statute states:

> [Generally], any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of

all assets such prisoner possesses[1] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1). A plaintiff's application is sufficient to warrant a waiver of filing fees if it "represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004). After reviewing the statements Plaintiff makes in his application, *see generally* [Doc. 3], the Court **GRANTS** his Motion for Leave to Proceed *In Forma Pauperis* [Doc. 3].

    **B.**    **Frivolity Review**

Having granted Plaintiff IFP status, § 1915(e) requires the Court to review his Complaint and determine whether it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e). The Eleventh Circuit has determined that "§ 1915(e), which governs [IFP] proceedings[,] generally permits district courts to dismiss a case 'at any time' if [a] complaint 'fails to state a claim on which relief may be granted.'" *Robinson v. United States*, 484 F. App'x 421, 422 n.2 (11th Cir. 2012) (per curiam). The Court can also dismiss an action at any time if it determines that the claims sought in it are frivolous or malicious or seek monetary relief against a defendant who

---

[1] "Despite the statute's use of the phrase 'prisoner possesses,' the affidavit requirement applies to all persons requesting leave to proceed [IFP]." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004).

is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) and (iii).

The proper contours of the term "frivolous," have been defined by the Supreme Court to encompass complaints that, despite their factual allegations and legal conclusions, lack an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). These types of complaints are subject to sua sponte dismissal by a district court. *Id.* at 324 (noting that dismissals under § 1915(e) "are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints"). More specifically, to survive this initial review, a claim must contain "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Operating on the assumption that the factual allegations in the complaint are true, such dismissal procedure streamlines litigation by dispensing with unnecessary discovery and factfinding. *Id.* However, a complaint will survive under Rule 12(b)(6) if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678–79).

Frivolity review under § 1915(e), on the other hand, has a separate function. Section 1915(e) is designed to discourage the filing of—and waste of judicial and private

resources upon—baseless lawsuits that paying litigants generally do not initiate due to filing costs and the potential threat of sanctions associated with filing such a lawsuit. *Neitzke*, 490 U.S. at 326. "To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of [a] complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* Even though Rule 12 and § 1915(e) both counsel dismissal and share "considerable common ground" with each other, one dismissal standard does not invariably encompass the other. *Id.* at 328. "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against [a] plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate, but dismissal on the basis of frivolousness is not." *Id.*

**C.     Plaintiff's Complaint**

Courts must construe complaints filed by pro se plaintiffs liberally and hold their allegations to a less stringent standard than formal pleadings drafted by lawyers. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). The underlying factual allegations for Plaintiff's lawsuit stem from his arrest on November 3, 2024, at a public political rally for then-presidential candidate Donald Trump in Macon, Georgia. [Doc. 1, p. 2]. In his Complaint, Plaintiff alleges he carried a cardboard sign with a message that was, in his opinion, "too vague to offend anyone." [*Id.*]; *see also* [Doc. 2, (Exhibit A; Video Footage of Event)]. Plaintiff's Complaint doesn't disclose what was written on the sign,

but according to a screenshot he submitted when he filed his Complaint, the sign's message read, "My Abuse Should Be On the News."[2] *See, e.g.*, [Doc. 2-1, p. 1].

To provide some context for Plaintiff's claims, that same screenshot also notes that "[w]hile signs are commonplace at rallies, the Trump campaign did not allow 'unapproved signage,'" but Plaintiff "was able to smuggle [one] in." [*Id.*]. The article published by 13WMAZ on November 4, 2024, states that when a security guard for the private security company hired by the Trump campaign "told [Plaintiff] to remove the sign, the [Bibb County Sheriff's Office] said [Plaintiff] refused and that's when the [Bibb County Sheriff's Office] said he struck the guard." [Doc. 2-1, p. 1]. In his Complaint, Plaintiff alleges that 13WMAZ's article falsely stated that he "had been arrested for 'assaulting an officer' and for 'sneaking contraband' into the rally." [Doc. 1, p. 2]. However, the very screenshot of the article Plaintiff submitted with his Complaint belies the specifics of that allegation. Quite plainly, the 13WMAZ article states that Plaintiff was "arrested for assaulting [a] *security guard*"—not an officer. *See, e.g.*, [Doc. 2-1, p. 1]; [Doc. 2-2, p. 1 (emphasis added)]. Semantics aside, it appears Plaintiff's defamation claims aren't predicated on *who* he supposedly assaulted—be it a security

---

[2] *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (reaffirming that courts may consider documents outside a complaint if the document is "central to [a] plaintiff's claims" and "undisputed"); *accord Ravan v. Talton*, No. 21-11036, 2023 WL 2238853, at *3 n.5 (11th Cir. Feb. 27, 2023) ("At the pleading stage, courts may consider (or 'incorporate by reference') documents that are not attached to the complaint so long as those documents are (1) referred to in the complaint, (2) central to [a] plaintiff's claims, and (3) of undisputed authenticity.").

guard or a law enforcement officer—but whether he assaulted anyone at all. He, of course, says he didn't "strik[e]" anyone. [Doc. 1, p. 2]; *see, e.g.*, [Doc. 2-1, p. 1]. Plaintiff alleges that 13WMAZ's fabricated news article recounting his "arrest[] for assaulting [a] security guard" damaged his reputation, lost him clients, and destroyed his business credibility within the community. [Doc. 1, pp. 2–3].

### D.   Subject-Matter Jurisdiction

In his Complaint, Plaintiff states that the bases for the Court's subject-matter jurisdiction arises under federal-question jurisdiction and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332, respectively. [*Id.* at p. 1]. Federal courts can only adjudicate cases as "authorized by Constitution and statute." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999); *Gunn v. Minton*, 568 U.S. 251, 256 (2013). In other words, unless Article III of the Constitution provides the jurisdictional basis, federal courts simply have no authority to act without a statutory grant of subject-matter jurisdiction. *Univ. of S. Ala.*, 168 F.3d at 409; *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

#### 1.   Federal-Question Jurisdiction

As an initial matter, Plaintiff cannot, based on the allegations from his Complaint, sustain claims for alleged deprivations of his First and Fourteenth Amendment rights against TEGNA or 13WMAZ. *See, e.g.*, [Doc. 1, p. 4]. The exclusive means for bringing damages suits in the federal courts for constitutional violations is

through 42 U.S.C. § 1983. While § 1983 is a federal statute under which federal courts may exercise subject-matter jurisdiction pursuant to § 1331, this Court has already informed Plaintiff in another lawsuit that "[t]o employ § 1983 as a remedy for a deprivation of constitutional rights, [he] must show that the alleged deprivation was committed by a person acting under the color of state law—that is, by a state actor." *Carlan v. Flint Energies*, No. 5:25-cv-00338-TES, 2025 WL 2472582 at *4 (M.D. Ga. Aug. 27, 2025) (citing *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995)). Without more, purely private conduct—such as conduct by broadcasting companies and media outlets—is not within the reach of § 1983. The requirement that a party must have acted act under color of state law necessarily excludes "merely private conduct, no matter how discriminatory or wrongful" from § 1983's reach. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). Only in rare circumstances can a private party be viewed as a "state actor" for purposes of liability under § 1983. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

To determine whether a private party acts under color of state law, the United States Supreme Court uses three tests. The first test is the public-function test which limits state action to instances where private actors are performing functions "traditionally the exclusive prerogative of the state." *Nat'l Broad. Co., Inc. v. Commc'n Workers of Am., AFL–CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988). Second, the state-compulsion test limits state action to instances where the government "has coerced or at

least significantly encouraged the action alleged to violate the Constitution." *Id.* (citations omitted). And third, the nexus- or joint-action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Id.* at 1026–27 (citations omitted).

Here, Plaintiff's Complaint does not demonstrate that either TEGNA or 13WMAZ acted under color of state law because it presents no allegations indicating that either TEGNA or 13WMAZ performed a traditional state function, that they were coerced by the Bibb County Sheriff's Office, or that they were joint participants with the Bibb County Sheriff's Office in a business enterprise. *See generally* [Doc. 1]. Thus, the Court concludes that neither TEGNA nor 13WMAZ are state actors. Consequently, Plaintiff's constitutional-deprivation claims brought against TEGNA and 13WMAZ pursuant to § 1983 lack an arguable basis in law, *Neitzke*, 490 U.S. at 326, and the Court **DISMISSES** them **without prejudice** for failure to state a claim on which relief may be granted pursuant § 1915(e)(2)(B)(ii). *See, e.g.*, *Anderson v. Suiters*, 499 F.3d 1228, 1233–34 (10th Cir. 2007) (finding the television news reporter and the company that owns the television station were not state actors); *Nichols v. Hendrix*, No. CIV 2:98–CV–161–WCO, 1999 WL 727233, at *2 (N.D. Ga. 1999) (finding that media defendants did not act under color of state law); *Williams v. Savannah Morning News*, No. CV407–066, 2007 WL 2302327, at *1 (S.D. Ga. 2007) (finding a newspaper is not a state actor and cannot be liable for publishing the news, and noting that a defamation claim is not recognized

under § 1983).

Given the dismissal of Plaintiff's § 1983 claims against TEGNA and 13WMAZ, Plaintiff's Complaint presents no other federal statute under which the Court may exercise subject-matter jurisdiction pursuant to § 1331. *Univ. of S. Ala.*, 168 F.3d at 409. Therefore, for the Court to be able to adjudicate this case, it must have subject-matter jurisdiction under § 1332's diversity jurisdiction. *See id.*

### 2. Diversity Jurisdiction

Diversity jurisdiction permits federal courts to hear matters unrelated to the Constitution, laws, or treaties of the United States where "the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States." 28 U.S.C. § 1332(a). This type of jurisdiction requires "complete diversity," meaning that no defendant can be a citizen from the same state as a plaintiff. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant.").

In this case, Plaintiff's two defendants are business entities. [Doc. 1, p. 1]. He alleges that Virginia-based corporation, TEGNA, is the parent company of 13WMAZ operating out of Macon, Georgia. [Doc. 1, p. 1]. With respect to his citizenship, Plaintiff quite clearly alleges that he "is a citizen of the State of Georgia." [*Id.*]. Thus, notwithstanding the Court's serious concerns regarding the amount in controversy— namely Plaintiff's ability to recover lost wages from 2020–2025 for defamation and

negligence claims that didn't even arise until November 4, 2024—it appears that diversity jurisdiction is present. *See* [Doc. 1, p. 5 (detailing alleged annual income for 2025 at $134,364)], *in connection with* [Doc. 2-1, p. 1].

### E. Order Directing Service

As for the only remaining claims in this lawsuit (Plaintiff's claims for defamation and negligence under Georgia law against TEGNA and 13WMAZ), they are sufficient to survive frivolity review. In short, Plaintiff claims that 13WMAZ published an article stating that "[h]e was charged with battery and was booked in the Bibb County jail."[3] [Doc. 2-1, p. 1]. According to Plaintiff's version, "public court records . . . showed no assault charge." [*Id.*]. Now, this could be for a couple of reasons. One, law enforcement could have merely "charged" Plaintiff with assault on an informal basis on November 3, 2024, at the time they arrested him. Two, the "charge" may not have yet been picked up by the District Attorney to formally charge Plaintiff with assault at the time 13WMAZ published its article on November 4, 2024. [Doc. 2-2, p. 1]. Nevertheless, as pled, Plaintiff's allegations—that TEGNA and 13WMAZ made false, and thus, defamatory, statements concerning him—are sufficient to survive frivolity review

---

[3] Plaintiff also mentions that at the time of his arrest he was "charged with battery, not assault," to seemingly provide additional support for his defamation and negligence claims against TEGNA and 13WMAZ. [Doc. 1, p. 2]. While it's true that the crime of "simple battery" requires an offensive touching or physical harm, O.C.G.A. 16-5-23, and "simple assault" does not, O.C.G.A. § 16-5-20, media reports discussing "battery" are often characterized as "assaults" for stylistic reasons. That, of course, is a discussion for another day.

under § 1915(e). Accordingly, the Court **ORDERS** that service be made by the United States Marshal pursuant to Federal Rule of Civil Procedure 4(c)(3).

F.     **Conclusion**

Consistent with the foregoing, the Court **GRANTS** Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* [Doc. 3] and **ORDERS** that service be made on TEGNA Inc. and 13WMAZ TV.[4] Plaintiff's claims against TEGNA and 13WMAZ for constitutional deprivations are **DISMISSED without prejudice** for the reasons discussed above, but his state-law defamation and negligence claims shall proceed for further factual development.

**SO ORDERED**, this 12th day of November, 2025.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**

---

[4] TEGNA and 13WMAZ are reminded of their duty to avoid unnecessary service expenses as discussed in Federal Rule of Civil Procedure 4(d)(1). Plaintiff should also review this rule since it allows him to "notify [TEGNA and 13WMAZ] that an action has been commenced" against them and "request that [they] waive service of a summons." Fed. R. Civ. P. 4(d)(1).