IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **JAMES THOMAS CARLAN,**<br><br>    *Plaintiff,*<br><br>**v.**<br><br>**TEGNA INC.,** and **PACIFIC AND SOUTHERN LLC d/b/a 13WMAZ TV,**<br><br>    *Defendants.* | **CIVIL ACTION NO.**<br>**5:25-cv-00480-TES** |

## ORDER

This case arises from allegations of defamation, negligence, and civil rights violations following an arrest at a political rally for Donald Trump. Pro se Plaintiff James Thomas Carlan claims that Defendants TEGNA, Inc. ("TEGNA") and Pacific and Southern LLC d/b/a 13 WMAZ TV ("13WMAZ," and together with TEGNA, "Defendants") damaged his reputation, lost him clients, and destroyed his business credibility within the community when 13WMAZ allegedly fabricated a news article recounting his arrest for assaulting a security guard.

Having filed more than half a dozen lawsuits in this district within the last two years, Plaintiff is no stranger to this Court. As for this case, though, when the Court received his complaint, it reviewed his allegations pursuant to 28 U.S.C. § 1915(e) given his approval to proceed *in forma pauperis*. [Doc. 1]; [Doc. 3]; [Doc. 4]. After conducting

the required frivolity review, the Court ruled that Plaintiff's allegations regarding his defamation and negligence claims, "as pled," were "sufficient to survive frivolity review under § 1915(e)." [Doc. 4, pp. 10–11]. The Court dismissed Plaintiff's claims asserting civil rights violations without prejudice since Defendants are not state actors as 42 U.S.C. § 1983 requires. [*Id.* at pp. 6–9]. In time, the United States Marshal served Defendants, as ordered, *see* Fed. R. Civ. P. 4(c)(3), and now, Defendants seek dismissal of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim. *See generally* [Doc. 19]. In all, there are three motions before the Court: (1) a motion to dismiss filed by Defendants, which the Court briefly refers to as their "Main Motion"; (2) a "Motion to Deny and Strike Motion to Dismiss" filed by Plaintiff; and (3) another motion to dismiss filed by Defendants. [Doc. 19]; [Doc. 13]; [Doc. 24]. The Court addresses these in reverse order.

### A.    Defendants' Motion to Dismiss [Doc. 24]

Defendants first sought dismissal on December 23, 2025. [Doc. 10]. For administrative reasons, the Clerk of Court directed them to refile this submission, and they did so on December 29, 2025. [Doc. 19]. On December 31, 2025, however, Defendants filed another motion to dismiss in which they mention an "accompanying [b]rief." [Doc. 24, p. 2]. Although Defendants filed this other motion on December 31, 2025, it's dated December 23, 2025. [*Id.*]. The Court's not quite sure what happened

because the other motion to dismiss does not, contrary to Defendants' assertions, have an accompanying brief. *See* [*id.*].

The Court can only assume Defendants filed the other motion on December 31, 2025, in error. Accordingly, the Court considers Defendants' arguments raised in their Main Motion [Doc. 19] and its accompanying brief [Doc. 19-1] refiled on December 29, 2025, and it **TERMINATES** Defendants' motion to dismiss [Doc. 24] filed on December 31, 2025.

### B.    Plaintiff's Motion to Strike and Deny Motion to Dismiss [Doc. 13]

In Plaintiff's effort to strike what would become Defendants' Main Motion, he argues "the Court has already determined [he] stated viable claims." [Doc. 13, p. 1]. That determination, however, was with respect to frivolity review under § 1915(e). The Court made sure to stress the limitation of its frivolity-review determination, twice. First, it stated, "As for the only remaining claims in this lawsuit (Plaintiff's claims for defamation and negligence under Georgia law against TEGNA and 13WMAZ), they are sufficient *to survive frivolity review*." [Doc. 4, p. 10 (emphasis added)]. Second, it stated, "Nevertheless, as pled Plaintiff's allegations—that TEGNA and 13WMAZ made false, and thus, defamatory[] statements concerning him—are sufficient *to survive frivolity review* under § 1915(e)." [*Id.* at pp. 10–11 (emphasis added)]. As the Court discussed in its previous Order, "[f]rivolity review under § 1915(e) . . . has a separate function" in comparison to Rule 12(b)(6). [*Id.* at p. 3].

Again, since it bears repeating, complaints reviewed under § 1915(e) enjoy a more relaxed standard than those having their "facial sufficiency" tested under Rule 12(b)(6). *See Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). In its previous Order, the Court thought it was clear that "[e]ven though Rule 12 and § 1915(e) both counsel dismissal and share 'considerable common ground' with each other, one dismissal standard does not invariably encompass the other." [Doc. 4, p. 4 (quoting *Neitzke v. Williams*, 490 U.S. 319, 328 (1989))]. Put simply, just because a complaint survives frivolity review does not mean it will survive a Rule 12(b)(6)-based motion to dismiss. For this reason, the Court **DENIES** Plaintiff's "Motion to Deny and Strike Motion to Dismiss." [Doc. 13, p. 1]. The Court will not strike Defendants' Main Motion simply because Plaintiff's state law claims survived frivolity review. It will address the merits of the dismissal arguments put forth by Defendants.

The Court also **DENIES** Plaintiff's "Motion to Deny and Strike Motion to Dismiss" for the simple fact that motions to strike under Rule 12(f) only permit courts to strike "any reductant, immaterial, impertinent, or scandalous matter" *from a pleading.* Fed. R. Civ. P. 12(f); [Doc. 13, p. 1]. A motion to dismiss is not a pleading. *See* Fed. R. Civ. P. 7(a) (listing the types of documents that constitute pleadings). Thus, Plaintiff cannot "strike" Defendants' Main Motion. All he can do is respond to it and try to overcome their arguments. In the remainder of his "Motion to Deny and Strike Motion

4

to Dismiss," Plaintiff does, however, advance responsive arguments for how "Defendants' motion fails on its own terms" under Rule 12(b)(6). [Doc. 13, pp. 1–3].

First, Plaintiff argues, "[e]ven if Rule 12(b)(6) review were appropriate at this stage, dismissal would still be improper" since his complaint, "alleges specific factual assertions which, when accepted as true—as is required at this stage—plausibly state claims for defamation and negligence." [*Id.* at p. 2]. Second, Plaintiff argues, "Rule 12(b)(6) does not authorize courts to resolve factual disputes, weigh credibility, or assess competing narratives." [*Id.*]. Generally speaking, Plaintiff argues "Defendants' disagreement with [his] assertions is not a basis for dismissal," and truth be told, Plaintiff's assessment of the Court's role at this stage isn't wrong. [*Id.*]. What he fails to account for, however, is the fact that the remaining claims in his lawsuit are state law claims—*i.e.* defamation and negligence. Meaning, for the Court to adjudicate them (since Plaintiff's federal claims were previously dismissed), it must have subject-matter jurisdiction pursuant to 28 U.S.C. § 1332's diversity provision. [Doc. 4, pp. 6–9].

## C.    Defendants' Motion to Dismiss [Doc. 19]

In its previous Order, the Court made sure to note its "serious concerns" about the amount in controversy. [Doc. 4, pp. 9–10]. So, it should come as no surprise that Defendants moved to dismiss based on a lack of subject-matter jurisdiction under Rule 12(b)(1). [Doc. 19-1, pp. 7–10]. However, before wading into Defendants' arguments about diversity jurisdiction, the Court notes that Plaintiff made no effort to amend his

complaint once he learned of their jurisdictional attack. He chose to stand on his complaint as drafted, opting to only argue against Defendants' Rule 12(b)(6)-based arguments. *See, e.g.*, [Doc. 13, pp. 1–2]. Let's quickly deal with Defendants' Rule 12(b)(1) stuff first.

### 1.    Defendants' Motion to Dismiss Under Rule 12(b)(1) for Lack of Diversity Jurisdiction

"Federal courts are courts of limited jurisdiction." *Burns v. Windsor Ins., Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Given this limitation, it is presumed that a federal court lacks jurisdiction in a particular case until a plaintiff demonstrates the existence of jurisdiction over the subject matter. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Turner v. Bank of N. Am.*, 4 U.S. 8, 11 (1799)). To invoke a federal court's diversity jurisdiction, a plaintiff must claim that the amount in controversy exceeds $75,000 and "is between citizens of different States." 28 U.S.C. § 1332(a).

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of [subject-matter] jurisdiction by either facial or factual attack." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008) (citing *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1250, 1251 (11th Cir. 2007)). If a defendant asserts a facial attack on a complaint, courts, taking the allegations in the complaint as true, merely look for whether the plaintiff "has sufficiently alleged a basis of [subject-matter] jurisdiction." *Id.* "By contrast, a factual attack on a complaint challenges the existence of [subject-matter] jurisdiction using

material extrinsic from the pleadings, such as affidavits or testimony." *Id.*

While there is complete diversity when it comes to the parties' citizenships,[1] Defendants contend that Plaintiff has "failed to plausibly allege that there is more than $75,000 in controversy." [Doc. 19-1, p. 7]. A plaintiff satisfies the amount-in-controversy requirement by claiming a sufficient sum in good faith. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Red Cab Co.*, 303 U.S. at 289. If a case presents an amount in controversy based on indeterminate damages, the "legal certainty" test gives way, and "the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *McKinnon Motors*, 329 F.3d at 807 (citing *Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1356–57* (11th Cir. 1996)).

While a plaintiff can generally satisfy the amount-in-controversy requirement through a "good faith" assertion, a conclusory allegation that the amount in controversy is satisfied is insufficient to sustain jurisdiction once that allegation is challenged.

---

[1] Plaintiff is a citizen of the State of Georgia. [Doc. 1, ¶ 2, 5]. TEGNA is the parent company of 13WMAZ and is incorporated in the State of Delaware with its principal place of business in Tysons, Virginia. [Doc. 1, ¶ 2, 6–7]; [Doc. 19-1, p. 4 n.3]; [Doc. 23, ¶¶ 4-5]. As for 13WMAZ, Pacific and Southern LLC's state of incorporation is Delaware, and its principal place of business is in also in Tysons, Virginia. [Doc. 18, ¶ 4]; [Doc. 23-1, p. 2].

*McKinnon Motors*, 329 F.3d at 807; *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1272 n.17 (11th Cir. 2000) (citing *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1254 (5th Cir. 1998)). Here, Defendants have certainly challenged Plaintiff's assertion that his damages exceed the requisite amount in controversy. A challenge that has, from Plaintiff's end, gone uncontested.

That said, the Court is cognizant that it must "give due credit to the good faith claims of [a] plaintiff," but it is equally cognizant of the Eleventh Circuit's guidance that courts "would be remiss in [their] obligations if [they] accepted every claim of damages at face value . . . ." *Morrison*, 228 F.3d at 1272. Courts should not "suspend reality or shelve common sense," but instead, they should "use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) (cleaned up). "[O]nce it is clear that as a matter of law the claim is for less than [$75,000]," the Court "is required to dismiss." *Morrison*, 228 F.3d at 1272 (quoting *Burns v. Anderson*, 502 F.2d 970, 972 (5th Cir. 1974)).

Here, however, because of the claims Plaintiff asserts in this lawsuit, he essentially alleges that from November 3, 2024, onward, he's sustained loss of income in many forms, notably from his ministry operations and business tenants. [Doc. 1, pp. 2, 5–6]. While Plaintiff did not present any evidence of his damages notwithstanding Defendants' clear challenge on the matter, Plaintiff's somewhat detailed accounting of

his "lost" estimated income for 2025 and his efforts to seek punitive damages are sufficient for the Court to deem the amount in controversy satisfied. *See* [*id.* at pp. 5–6]; *see also McKinnon Motors, LLC*, 329 F.3d at 807 (holding the amount-in-controversy requirement is satisfied when a sufficient sum is claimed in good faith). Thus, the Court declines to dismiss this case for lack of subject-matter jurisdiction. To be clear, using its "judicial experience and common sense," the Court doesn't believe Plaintiff would come anywhere close to the $11.7 million sought, but the damages alleged "more likely than not" could've exceeded federal jurisdictional requirements had he stated plausible defamation and negligence claims. *Roe*, 613 F.3d at 1061–1062; [Doc. 1, p. 6].

> **2.** **Defendants' Motion to Dismiss Plaintiff's Defamation Claim Under Rule 12(b)(6) for Failure to State a Ciaim**

First, in ruling on a motion pursuant to Rule 12(b)(6), it is a cardinal rule that the well-pled factual allegations must be accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, Rule 12(b)(6) must be read in conjunction with the pleading rules set forth in Rule 8, which requires a pleading to "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Notwithstanding Plaintiff's well-pled allegations, his complaint, generally predicated on defamation, fails to state a claim upon which relief can be granted.

Plaintiff claims that on November 3, 2024, he "was arrested at a public political rally in Macon, Georgia," and charged with battery. [Doc. 1, ¶¶ 8, 16]. After his arrest, Plaintiff claims he "was held in the Bibb County Jail for 14 days" without "food, water,

and phone access." [*Id.* at ¶ 24]. Plaintiff further claims this detention prevented him from contacting clients and family. [*Id.*]. He says he "almost died" in custody and because of that he says he "was admitted to [the] hospital." [*Id.* at ¶ 25]. "During this time," Plaintiff alleges that his "business collapsed, his clients withdrew, and [his] rental tenants vacated." [*Id.* at ¶¶ 23, 26].

Despite Plaintiff's general allegations about statements purportedly made by "Defendants" in "their publication" (the "News Article"), he does not allege that TEGNA actually published it. [Doc. 1, ¶ 17 (Plaintiff's allegation that 13WMAZ "published" the News Article)]; [Doc. 2-1]; [Doc. 2-2]. To be sure, the only allegation Plaintiff makes in his complaint directly related to TEGNA is that TEGNA is the parent company of 13WMAZ and "own[s] and control[s] its editorial and publication decisions." [Doc. 1, ¶ 6]; *see* n.1, *supra*.

Corporate intricacies aside, Plaintiff alleges on November 4, 2024, the day after his arrest, 13WMAZ published the News Article on its website: "**Macon man arrested for assaulting security guard during Donald Trump rally, BSO confirms**." [Doc. 1, ¶¶ 11–12, 17]; *see, e.g.*, [Doc. 2-1]; [Doc. 2-2]. The News Article reported that, "according to the Bibb County Sheriff's Office," Plaintiff "was approached by the event's private security for holding a 'contraband' sign" and "was arrested . . . after he allegedly assaulted event security." [Doc. 2-2]. The lime green posterboard sign read: "My Abuse Should Be On the News." [Doc. 2-1]. The News Article further reported that the Bibb

10

County Sheriff's Office said, "the Trump campaign did not allow 'unapproved signage,'" that the sign Plaintiff brought to the event "was not allowed," that Plaintiff "struck the guard" after being told to remove the sign, and that Plaintiff "has been combative since his arrest." [*Id.*]. The News Article concluded by reporting that Plaintiff was "charged with battery and booked into the Bibb County jail." [*Id.*]. This is what Plaintiff takes issue with. He generally bases his claim for defamation on the fact he was "charged with battery, not assault" and that even the News Article reports "he denied having struck the security guard." [Doc. 1, ¶ 16]; [Doc. 2-1, p. 1]. Whether Plaintiff is guilty of the battery charge is, however, irrelevant to the defamation claim before the Court.

The Court watched the video Plaintiff submitted along with his complaint, and it's clear there's an offensive touching. O.C.G.A. 16-5-23; *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (reaffirming that courts may consider documents outside a complaint if the document is "central to [a] plaintiff's claims" and "undisputed"); *accord Ravan v. Talton*, No. 21-11036, 2023 WL 2238853, at *3 n.5 (11th Cir. Feb. 27, 2023) ("At the pleading stage, courts may consider (or 'incorporate by reference') documents that are not attached to the complaint so long as those documents are (1) referred to in the complaint, (2) central to [a] plaintiff's claims, and (3) of undisputed authenticity."). Although the video shows Plaintiff eventually being overpowered, there's no doubt Defendants were legally able to report and publish what the Bibb County Sheriff's

11

Office told it about its altercation with him. *See Minton v. Thomson Newspapers, Inc.*, 333 S.E.2d 913, 916 (Ga. Ct. App. 1985).

To establish a cause of action for defamation, a plaintiff must allege (1) a false and defamatory statement about himself; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special damages or defamatory words "injurious on their face." *Smith v. Stewart*, 660 S.E.2d 822, 828 (Ga. Ct. App. 2008). In their motion to dismiss, Defendants point out that Plaintiff's complaint does not dispute that the News Article accurately reported the information provided *to* 13WMAZ *by* the Bibb County Sheriff's Office. [Doc. 19-1, p. 4]. Instead, Defendants argue that Plaintiff alleges the News Article falsely stated he "had been arrested for assaulting"—as opposed to "battering"—an officer and "sneaking [a] contraband" sign into the rally. [*Id.* (citing [Doc. 1 at ¶ 17])]; *see also* [Doc. 19-1, p. 13 (citing O.C.G.A. § 16-5-20) ("Had [13]WMAZ stated that Plaintiff was 'arrested for battering a security guard' and that Plaintiff 'battered event security,' that would have been entirely truthful and more harmful to Plaintiff's reputation than the statements he alleges were defamatory, particularly since 'assault' only involves an attempted or threatened 'battery.'")].

"[F]alsity is an essential element of both libel and slander," so, "truth is a 'perfect defense' to a defamation action." *Lucas v. Cranshaw*, 659 S.E.2d 612, 615 (Ga. Ct. App. 2008). While truth is undoubtedly a complete defense to an allegedly defamatory

12

statement, even statements that are "substantially true" can thwart a defamation claim under Georgia law. *Oskouei v. Matthews*, 912 S.E.2d 651, 662 n.9 (Ga. 2025); *Jaillett v. Ga. Television Co.*, 520 S.E.2d 721, 724 (Ga. Ct. App. 1999). "[D]efamation law overlooks minor inaccuracies and concentrates upon substantial truth." *Jaillett*, 520 S.E.2d at 724.

In defense of Plaintiff's defamation claim, Defendants contend he "cannot satisfy the falsity element of his defamation claim because the statements in the News Article were substantially, if not literally, true." [Doc. 19-1, p. 12]. Although the News Article plainly reports Plaintiff "was charged with battery," Plaintiff explicitly admits in his complaint that's true. [Doc. 2-1]; [Doc. 1, ¶ 16]. In no uncertain terms Plaintiff alleges he "was arrested" and "*charged with battery*." [Doc. 1, ¶ 16 (emphasis added)]. Further, Plaintiff's half-clever attempt to base his defamation claim on the "minor" or minute nuances between "assault" and "battery" are unavailing. *See Jaillett*, 520 S.E.2d at 724 ("'[M]inor factual errors which do not go to the substance, the gist, the sting of [a] story' do not render a communication false for defamation purposes."). As the Court previously noted, the crime of "simple battery" requires an offensive touching or physical harm, O.C.G.A. § 16-5-23, and "simple assault" does not, O.C.G.A. § 16-5-20. [Doc. 4, p. 10 n.3]. Despite their differences, media outlets (as well as law enforcement, the legal profession, and most of the general population), when discussing "battery" characterize and refer to that crime as an "assault." That is exactly why "statements cannot be considered in isolation to determine whether they are true or false." *Bryant v.*

*Cox Enters., Inc.*, 715 S.E.2d 458, 466 (Ga. Ct. App. 2011).

Georgia law is clear that each statement must be construed "in the context of the entire writing to assess the construction placed upon it by the average reader." *Id.* When reading the headline from the News Article, in conjunction with its full substance, the average reader would believe that Plaintiff had been arrested and charged with battery for allegedly *assaulting* event security. *Cmty. Newspaper Holdings, Inc. v. King*, 682 S.E.2d 346, 349 (Ga. Ct. App. 2009); [Doc. 2-1]; [Doc. 2-2]. Thus, Plaintiff's defamation claim fails because, as Defendants argue, "the statements in the News Article were substantially, if not literally, true." [Doc. 19-1, p. 12]; *see Cmty. Newspaper Holdings, Inc.*, 682 S.E.2d at 349; *Jaillett*, 520 S.E.2d at 724.

Notwithstanding the truth of the News Article, Defendants also argue that the fact the statements in it are privileged presents a separate and independent basis to dismiss Plaintiff's defamation claim. [Doc. 19-1, p. 14]. Relying on O.C.G.A. § 51-5-7(8), they argue that certain categories of speech, like "[t]ruthful reports of information received from any arresting officer or police authorities" are deemed conditionally privileged. [*Id.*]. Then, relying on O.C.G.A. § 51-5-7(4), they argue that statements made "as part of an act in furtherance of the person's or entity's right of petition or free speech . . . in connection with an issue of public interest or concern" are also privileged. [*Id.*]; *see also* O.C.G.A. § 9-11-11, *infra*.

First, as briefly touched on above, the News Article was a direct result of what

14

the Bibb County Sheriff's Office reported to 13WMAZ. "[S]tatements . . . made in good faith taken from and pursuant to . . . reports made by police pursuant to investigation of a crime are made in the performance of a public duty and are privileged." *Minton*, 333 S.E.2d at 915–16. "Members of the media which routinely broadcast or publish news stories of what happens in the community in which the public has a legitimate interest are afforded a cloak of protection in that the publication constitutes a qualified privilege." *Id.* at 916. That is ardently clear under Georgia law. That said, where the privilege is qualified, meaning it's conditional, "the exercise of the privilege must be exercised in good faith and ordinary care." *Id.*

In determining whether the publisher exercised ordinary care in ascertaining the truth or accuracy of its publication, Georgia's courts draw special focus to whether the statements concern police interactions with a citizen of the community or the community itself. *See id.* In those situations, "[n]ot only [would] the publication [be] conditionally privileged[,] but the law does not require a publisher to conduct an independent investigation unless the police report [would] raise serious doubts as to the truth of the publication." *Id.* Thus, the News Article and the statements in it are privileged under O.C.G.A. § 51-5-7(8).

Second, as Defendants argue, the News Article "cannot be questioned" as "a quintessential act in furtherance of the right to free speech." [Doc. 19-1, p. 16 (citing *N.Y.*

15

*Times Co. v. U.S.*, 403 U.S. 713, 717 (1971))]; *see also* O.C.G.A. § 9-11-11.1.[2] "The critical

consideration is whether the cause of action is based on the defendant's protected free

speech or petitioning activity." *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 830 S.E.2d

119, 127 (Ga. 2019). News articles generally arise from protected First Amendment

activity, so the amendment places *substantial* limitations on defamation law. *Morgan v.*

*Mainstreet Newspapers, Inc.*, 889 S.E.2d 217, 221 (Ga. Ct. App. 2023). "Without question,

'[s]peech on matters of public concern is at the heart of the First Amendment's

protection.'" *Id.* at 222 (quoting *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011)).

As this case concerns events from a presidential campaign rally, news stories

stemming from that event, including stories of alleged criminal activity, are of inherent

public concern, and reporting on them is at the core of the First Amendment. *N.Y. Times*

*Co.*, 403 U.S. at 717. Thus, the News Article and the statements in it are privileged under

O.C.G.A. § 51-5-7(4) as well. Accordingly, the Court **GRANTS** Defendants' motion to

---

[2] Georgia's anti-SLAPP statute states:

> A claim for relief against a person or entity arising from any act of such person or entity which *could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern* shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

O.C.G.A. § 9-11-11.1(b)(1) (emphasis added). "A SLAPP, or Strategic Lawsuit Against Public Participation, is a meritless lawsuit brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up its target's resources and driving up the costs of litigation." *Mauck v. Athens Pride, Inc.*, 922 S.E.2d 870, 876 (Ga. Ct. App. 2025). "Georgia's anti-SLAPP statute . . . allows a defendant to move to strike or dismiss such a frivolous action as an avenue for ending the suit quickly, summarily, and at minimal expense." *Id.* Therefore, in cases like this one, where the anti-SLAPP statute applies, courts routinely, somewhat automatically, dismiss defamation claims.

16

dismiss Plaintiff's defamation claim pursuant to Rule 12(b)(6) and **DISMISSES** it **with prejudice**.[3] *Dixon v. Bd. of Cnty. Comm'rs Palm Beach Cnty., Fla.*, 518 F. App'x 607, 610 (11th Cir. 2013) ("A Rule 12(b)(6) dismissal with prejudice is an adjudication on the merits.") (citing *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 893 (11th Cir. 2013)); *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560 (11th Cir.1990) ("[U]nless [a] court specifies otherwise, dismissal on the grounds that the facts and law show no right to relief operates as an adjudication on the merits[.]").

### 3.    Defendants' Motion to Dismiss Plaintiff's Negligence Claim Under Rule 12(b)(6) for Failure to State a Ciaim

Lastly, the Court turns to Plaintiff's claim for negligence. Defendants contend that if Plaintiff's negligence claim is based on the statements in the News Article, then his negligence claim fails for the same reasons as his defamation claim. [Doc. 19-1, p. 19]. The Court agrees. To this very issue, the Georgia Court of Appeals has held that "[a] negligence claim must result from the breach of a duty," and as discussed above, that "is the third element of a cause of action for defamation." *Lewis v. Meredith Corp.*, 667 S.E.2d 716, 719 (Ga. Ct. App. 2008) (citing *Mathis v. Cannon*, 573 S.E.2d 376, 380 (Ga.

---

[3] In the Eleventh Circuit, "'a [pro se] plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice'—at least, that is, where 'a more carefully drafted complaint might state a claim.'" *Silberman v. Mia. Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019) (quoting *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018)). Here, however, given the truth of the News Article, the implications of Georgia's anti-SLAPP statute, and the privileged communications under O.C.G.A. §§ 51-5-7(4) and (8), it's clear that an additional or amended complaint would not save Plaintiff's defamation claim. Thus, dismissal with prejudice is warranted.

2002)); *see also Smith*, 660 S.E.2d at 828, *supra*. Put simply, since Plaintiff fails on his defamation claim, his claim for negligence also fails. Therefore, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's negligence claim pursuant to Rule 12(b)(6) and **DISMISSES** it **with prejudice.** *Dixon*, 518 F. App'x at 610; *N.A.A.C.P.*, 891 F.2d at 1560; *see also* n.3, *supra*.

### D.    Conclusion

While the Court does not dismiss Plaintiff's case for lack of subject-matter jurisdiction, it does **GRANT** Defendants' Motion to Dismiss [Doc. 19] given Plaintiff's failure to state defamation and negligence claims. The Clerk of Court is **DIRECTED** to **ENTER** Judgment in Defendants' favor and **CLOSE** this case.

**SO ORDERED**, this 26th day of February, 2026.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**